```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   EASTERN PARALYZED VETERANS
     ASSOCIATION,
 4
                 Plaintiff,
 5
            v.                                 94 Civ. 435 (GBD)
 6
     THE CITY OF NEW YORK,
 7
                 Defendant.
 8
     ------------------------------x
 9
     CENTER FOR INDEPENDENCE OF THE
10   DISABLED, NEW YORK, et al.,

11               Plaintiffs,

12          v.                                 14 Civ. 5884 (GBD)

13   THE CITY OF NEW YORK, et al.,

14               Defendants.

15   ------------------------------x

16
                                               New York, N.Y.
17                                             July 23, 209
                                               10:55 a.m.
18   Before:

19              HON. GEORGE B. DANIELS,

20                                             District Judge

21

22

23

24

25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

APPEARANCES

BROACH & STULBERG
        Attorneys for 94 Civ. 435 Plaintiffs
BY:  ROBERT B. STULBERG
        JULIE DABROWSKI

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
        Attorneys for 15 Civ. 5884 Plaintiffs
BY:  DANIEL L. BROWN

NEW YORK CITY LAW DEPARTMENT
        Attorneys for Defendants
BY:  SHERRILL M. KURLAND
        MICHELLE L. GOLDBERG-CAHN

DISABILITY RIGHTS ADVOCATES
        Attorneys for Objector CIDNY
BY:  MICHELLE ANNE CAIOLA

CRAVATH SWAINE & MOORE LLP
        Attorneys for Objectors
BY:  DARIN P. McATEE

1           (Case called; appearances taken)

2           THE COURT:  Good morning.

3           Let me start with the plaintiffs.

4           Where are you at this point?

5           MR. STULBERG:  Good afternoon, Your Honor.  We are
6    here to report the very good news that the parties have
7    completed all of the requirements of the preliminary order that
8    Your Honor issued on March 19 of 2019.  That was docket 223.

9           That order set forth notice requirements, a series of
10   postings, web listings, and other forms of notice.  All of
11   those have been done.  There are declarations attached to our
12   pending motion setting forth the completion of that process.

13          In addition, in response to those notices, we have
14   received only one objection which was made in the form of a
15   voicemail initially sent to the Disability Rights Advocates.
16   That individual simply stated a general objection.

17          The DRA followed up with a phone call and spoke to the
18   individual who indicated that he was under the mistaken
19   impression that the settlement agreement would actually
20   decrease the number of pedestrian ramps in the city.  We have
21   not heard from that individual since, and to my knowledge, he
22   is not here.  So we essentially have no objections, your Honor.

23          The reason we are here, of course, is to request that
24   the Court now issue an order finally approving the settlement
25   agreement that was preliminarily approved in March.  We have

1  provided your Honor with motion papers which set out all the
2  facts I was just referring to as to notice and to objections or
3  lack thereof.
4          In addition, those papers set out again, much as we
5  did in March, the contents of the agreement and the various
6  implementation deadlines and all the other aspects of the
7  program.
8          We have provided the Court with a draft proposed final
9  order which was initially attached as Exhibit A to the
10 settlement agreement.  The settlement agreement is Exhibit A to
11 the motion.  I believe we have provided to your Honor's clerk a
12 copy of that document.
13         Since we went over in some detail last time much of
14 the content, I will describe it only briefly here, unless
15 your Honor wishes me to go into more detail any aspect of the
16 agreement.
17         The parties have agreed -- this is actually set out in
18 paragraph 4 of the settlement agreement, page 10 of Exhibit A
19 to the motion -- as follows:
20         "The federal government in enacting the ADA found that
21 the installation of pedestrian ramps in all locations of the
22 city where pedestrian walkways cross curbs is essential to the
23 integration of those with disabilities, particularly those who
24 use wheelchairs, into the commerce of daily life."  This
25 agreement commits the parties to implementation.

            Now I'm no longer quoting from the agreement.  This
agreement commits the parties to implementation of a
comprehensive plan for making the city's approximately 162,000
street corners fully accessible to people with disabilities,
including those with mobility and vision impairments.

            The agreement requires, among other things, citywide
surveys of all street corners and pedestrian ramps conducted
using laser technology; completion of pedestrian ramp
installations at all street corners remaining to be ramped;
upgrades of all pedestrian ramps that do not comply with state
or federal accessibility laws; ongoing maintenance and repair
of pedestrian ramps continuing beyond the term of the agreement
on an annual basis; a complaint program enabling plaintiff
class members to report pedestrian ramps that need to be
installed, upgraded, or repaired; temporary and permanent
remediation of pedestrian ramps that are reported in
complaints; oversight by an independent monitor to ensure
transparency and accountability.

            Under the agreement, the parties have 45 days from the
date of approval, final approval, to attempt to agree upon who
that independent monitor will be.  If we cannot agree, the
parties have an additional 30 days to request that the Court
appoint a monitor.

            In addition, the agreement calls for the creation of a
pedestrian ramp program unit at the city's Department of

1   Transportation headed by an associate deputy commissioner.

2   The agreement sets schedules for completion of
3   installation of pedestrian ramps at all standard corners, that
4   is, those not requiring some special design to deal with some
5   special feasibility or accessibility problem.  So those
6   installation, pedestrian ramps at standard corners, are to be
7   completed by the close of fiscal year 2021.

8   Installation of pedestrian ramps at complex corners,
9   in other words, those requiring special designs to make it
10  possible to achieve, if not full accessibility, availability
11  under the law, thus accessibility under the law -- those
12  pedestrian ramps at complex corners are to be completed by the
13  close of 2030.

14  Upgrades of noncompliant pedestrian ramps at standard
15  corners are to be completed by the close of fiscal year 2034.
16  Upgrades of noncompliant pedestrian ramps of complex corners
17  are to be performed at the rate of approximately 815 corners
18  per year starting in fiscal year 2035.

19  The agreement also contains provisions for pedestrian
20  ramp related recordkeeping and reporting, staff training,
21  conflict resolution; and the agreement provides that the Court
22  will maintain jurisdiction over the agreement during its term
23  and during any extension ordered by the Court.

24  The motion papers set out the legal basis for the
25  finding we seek here, namely, that the agreement is fair,

1  reasonable, and adequate to protect the interest of plaintiff
2  class members, to resolve all claims in both actions -- the
3  EPVA, United Spinal, and the Sidney action -- and to resolve
4  all objections that remain in the EPVA and the United Spinal
5  action.
6        Further, as I mentioned a moment ago, as detailed in
7  the declarations of Ms. Caiola, my own declaration, and the
8  declaration of city council Sherrill Kurland of the New York
9  City Law Department, the parties have timely complied with all
10 notice requirements that the Court set forth in the preliminary
11 approval order.  I have relayed to the Court the absence of
12 objections.
13       Based on those facts, plaintiffs in the EPVA/United
14 Spinal action and the plaintiffs in the city action and the
15 objectors in the EPVA action all submit that the settlement
16 agreement will provide plaintiff class members with a carefully
17 crafted infrastructure program that will protect the basic
18 civil rights of plaintiff class members to be able to safely
19 and reliably cross the city's streets.
20       For this reason and for the other reasons set forth in
21 our papers, movant respectfully requests, with the consent of
22 defendants, that the Court grant final approval of the
23 agreement consistent with the proposed order granting final
24 approval of settlement of class action lawsuits annexed to the
25 agreement as Exhibit A.

1          If your Honor wishes more detail, we will be pleased
2    to provide it.  We will also add that one issue remains to be
3    resolved, and that is payment of attorney's fees.
4          The parties, upon issuance of a final order, intend to
5    discuss that issue and attempt to resolve it without the need
6    for submission of any motions to the Court, and we will keep
7    the Court apprised of our progress.  In that regard, we
8    appreciate the Court's willingness to allow us to proceed in
9    that manner.
10         If the Court has any other questions, I'd be happy to
11   answer them.
12         THE COURT:  No.  Thank you.
13         Did anyone else want to be heard on the plaintiffs'
14   side?
15         Ms. Kurland, did you want to be heard further on
16   behalf of the city?
17         MS. KURLAND:  The defendant consents to the Court's
18   approval of this motion in the order as proposed.  I just
19   wanted to add that there are affidavits attached to the motion
20   papers with respect to compliance with the Class Action
21   Fairness Act as well.  Thank you.
22         THE COURT:  All right.  I am prepared to give final
23   approval to the settlement agreement of the parties.  I've
24   reviewed it thoroughly.
25         I find it's fair and adequate and reasonable for the

1  settlement class.  It provides a comprehensive plan for

2  installation and maintenance and oversight on a reasonable

3  schedule for full compliance.

4         It is a major step toward full accessibility and

5  mobility for all residents and visitors of the city.  I think

6  back and should say that having overseen the agreement with

7  regard to taxicab accessibility, that in combination with that

8  previous settlement which provides for 50 percent of cabs being

9  wheelchair accessible by the end of next year, that in

10 combination with that effort, this is a significant improvement

11 of our city and full accessibility for all residents and

12 visitors.

13        I will sign the final order, and I thank the parties,

14 all the parties, for their good-faith efforts toward a

15 reasonable settlement for which all the residents and citizens

16 of New York City should be thankful and proud of the efforts

17 that have been made.

18        If you need assistance with regard to attorney's fees,

19 you can provide that to me.  Obviously the intent is to stay on

20 a reasonable schedule in full compliance and to monitor that

21 progress.

22        I am more than just hopeful but am optimistic and

23 confident that the schedule and the efforts at full compliance

24 will continue to progress and be successful.

25        So I will sign the final order of approval and will

1   provide copies to each side today.  I will have it filed today
2   on the docket.  Other than awaiting the final submission with
3   regard to attorney's fees, I will close out both the original
4   case and the new case that had been filed.
5           Again, I thank all the parties for their efforts in
6   this regard.  It was a goal that both sides genuinely wanted to
7   reach.  It is a rare instance where I have a litigation where
8   both sides can go away happy, and I think that this is one of
9   those rare occasions.  So I again thank you for your successful
10  efforts.
11          Anything further to be addressed by the plaintiffs or
12  by the city?
13          MR. STULBERG:  The only thing we would add,
14  your Honor, is our heartfelt thanks for the Court's patience
15  and assistance along the way.  The Court has made it possible
16  for us to take the appropriate time to reach this agreement.
17          And we also extend our thanks to Magistrate Fox who
18  assisted us in mediating at the points where we were unable to
19  reach agreement without that assistance.  Again, we deeply
20  appreciate that assistance, your Honor.
21          THE COURT:  And I will immediately call him and let
22  him know that appreciation and the successful resolution of
23  this case.
24          MR. BROWN:  Your Honor, if I may.  I want to thank the
25  Court as well.

1           At times this was contentious, and we've all reached a
2    great place where we want to be.  It's been a long haul.  I
3    really want to thank the clients in this case and the advocates
4    who have been here all the way and who are here today as well.
5           THE COURT:  Thank you very much, ladies and gentlemen.
6    Good luck.
7           (Adjourned)